The Griffin & Skelley Company, Appellant, vs. Joannes and others, Respondents.

*November 19 — December 15, 1891.*

*Evidence: Expert testimony: Letter of agent: Instructions to jury: Comments of counsel.*

1. In an action to recover an unpaid balance of the purchase price of oranges sold to defendants and guaranteed to be in good condition when shipped from California, but which were received by them at Green Bay in bad condition, witnesses experienced in the business of buying and selling oranges, and who had handled California

oranges for years, were properly allowed to testify to the effect that the condition in which the oranges were received indicated that they were not in good condition when shipped.

2. A letter written to defendants by plaintiff's broker, through whom they had bought the fruit, expressing surprise at its condition as reported by them, and requesting them to write to the plaintiff about the matter, was admissible in evidence on behalf of defendants.

3. A statement in the charge that the conclusiveness of certain testimony was for the jury to determine, "in view of the testimony and comments of counsel upon it," cannot be held a material error, where it does not appear what such comments were or by which counsel made.

APPEAL from the Circuit Court for *Brown* County.

The complaint alleges, in effect, the plaintiff's incorporation and business at Riverside, Cal.; the defendants' partnership and business at Green Bay; that March 20, 1890, the plaintiff sold and delivered to the defendants, free on board the car at Riverside, Cal., at buyer's risk, 300 boxes of oranges, at the agreed price of $2 per box; that the defendants promised to pay that amount therefor in thirty days from that date, but had only paid $426.69; and claimed a balance of $173.31, with interest and costs. The answer consisted of admissions, and alleged, by way of counterclaim, that by the terms of said purchase said oranges were to be freshly picked, freshly packed, sound, and in good condition when shipped, and guaranteed against frost while in transit, and that the plaintiff assumed all risk of freezing; that as a matter of fact the oranges were not freshly picked, freshly packed, sound, nor in good condition when shipped, but had been picked and packed a long time, and were frost-bitten and partly decayed, and while in transit were further injured by frost and cold weather, to the defendants' damage in the sum of $209.75. The plaintiff replied a general denial to the counterclaim.

At the close of the trial the jury returned a special ver-

dict to the effect that it was a part of the contract for the purchase of the oranges that the plaintiff guaranteed that they would not be injured by frost while in transit; that the oranges, when delivered on the car at Riverside, were not in a sound and good condition, but were chilled or frost-bitten; that the defendants lost sixty-four boxes of said oranges by reason of their being decayed when they arrived at Green Bay. The court thereupon ordered judgment in favor of the defendants, dismissing the plaintiff's complaint, and for $25.89 damages and $59.24 costs. From the judgment entered accordingly the plaintiff appeals.

*F. C. Cady,* for the appellant.

For the respondents there was a brief by *Greene & Vroman,* and oral argument by *C. E. Vroman.*

CASSODAY, J. The defendants contracted for the oranges with the plaintiff's broker at Milwaukee. He was examined as a witness on behalf of the plaintiff on the trial. He testified to having had some experience in shipping oranges to Milwaukee from the same place; that the oranges in question were to be sound seedling oranges, packed and in good condition at Riverside. There was no material error in allowing him to testify, on cross-examination, in effect, that the distance which oranges were shipped had something to do with their condition when shipped. Nor was there any material error in allowing the witness Stephens to testify, in effect, that it would injure the keeping qualities of oranges if they were chilled before they were packed; that they would begin to show the effects of heat at the end of ten days; that they would then be more or less rotten; that he was familiar with seedling oranges, and considered them the best keepers from that section in March and April; that in case of a car of seedling oranges shipped from Riverside in a ventilated refrigerator car, March 20th, and on reaching Green Bay March 31st, found to contain,

out of 300 boxes, sixty boxes that were rotten and entirely worthless, he should say there was some defect in their keeping qualities when packed; that they were not in good shipping condition; that distance had everything to do with shipping qualities; that he had experience in oranges chilled on the trees in Florida, and ten or eleven days on the road, which were worthless; that he had received oranges at Milwaukee shipped from Riverside and vicinity in March and April, previous to the trial, in good condition. This witness had been in the fruit business in Milwaukee, buying and selling oranges on commission, in car-load lots, for twenty-four years, and had handled California oranges, more or less, for ten years, and had received oranges from Riverside for seven years previous to the trial. Quite similar is the testimony of the witness Larson. It would be impossible to prove, by direct evidence, the exact condition of the oranges in question for every mile or every day while in transit. Such opinions of such experienced men were admissible. *Whitney v. Thacher,* .117 Mass. 527. In the light of their testimony, it is very evident that the condition of the oranges, when received at Green Bay, was some evidence of the condition they were in when shipped.

Two days after the oranges were received by the defendants at Green Bay they wrote the plaintiff's broker at Milwaukee, with whom they contracted for the same, as to the condition of the oranges, and thereupon received a letter from him, dated April 3, 1890, in effect expressing surprise at the result, and a desire to visit Green Bay, but that it was unnecessary, as he would take their word for anything, and stating that he could do nothing in the matter, and requesting them to write the plaintiff in regard to the condition of the oranges, and that he would do the same. We perceive no material error in admitting the letter in evidence, nor in allowing the attorney for the defendants to talk about it in arguing the case to the jury. It related

directly to the contract made with the broker, and was a negotiation respecting an alleged breach of that contract.

The plaintiff introduced the testimony of various witnesses, in the form of depositions, to the effect that the oranges were in good condition when they were packed and shipped. Exception is taken because the court, in referring to this testimony, said to the jury: " How conclusive and thorough and complete it may be in sustaining that position it is for you to determine, in view of the testimony *and comments of counsel upon it.*" Just what such comments were, or by which counsel they were made, does not appear. We shall not assume that they were improper or prejudicial to the plaintiff. A party who would reverse a judgment for error must make it appear affirmatively in the record that error has been committed.

The charge is full and fair throughout. The evidence is sufficient to sustain the verdict. There appears to be no good reason for criticising the form of the special verdict. That verdict, among other things, finds, in effect, that when delivered on the car at Riverside the oranges were not in a sound and good condition, but were chilled or frosted. It is enough to know that there is some evidence to support that finding.

*By the Court.*— The judgment of the circuit court is affirmed.